1

2

3

4

5

6

7

8

9

10

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

11

12

13

14

15

16

| MARIA AGUILAR DE OROZCO, | Case No. 1:18-cv-00817-SAB |
| Plaintiff, | ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL AND DIRECTING CLERK OF THE COURT TO ENTER JUDGMENT IN FAVOR OF DEFENDANT |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | (ECF Nos. 15, 17, 18) |
| Defendant. | |

17

18

**I.**

19

**INTRODUCTION**

20    Maria Aguilar de Orozco ("Plaintiff") seeks judicial review of a final decision of the

21  Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for

22  disability benefits pursuant to the Social Security Act. The matter is currently before the Court

23  on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley

24  A. Boone.[1]

25    Plaintiff suffers from migraine disorder, lumbar spondylosis, and adjustment disorder

26  with mixed depression and anxiety. For the reasons set forth below, Plaintiff's Social Security

27  appeal shall be denied.

28  _____

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 6, 10.)

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed a Title XVI application for supplemental security income on June 13, 2014. (AR 551.) Plaintiff's application was initially denied on November 6, 2014, and denied upon reconsideration on June 12, 2015. (AR 583-586, 592-596.) Plaintiff requested and received a hearing before Administrative Law Judge Judith A. Kopec ("the ALJ"). Plaintiff appeared for a video hearing on January 19, 2017. (AR 513-540.) On May 2, 2017, the ALJ found that Plaintiff was not disabled. (AR 20-40.) The Appeals Council denied Plaintiff's request for review on April 18, 2018. (AR 1-4.)

### A.     Relevant Hearing Testimony

Plaintiff appeared for a video hearing on January 19, 2017, and testified with the assistance of an interpreter. (AR 519-533.) At the hearing, Plaintiff amended the alleged onset date to June 13, 2014. (AR 518.) Plaintiff was born on January 3, 1968. (AR 519.) She is 5'6" tall and weighs about 150 pounds. (AR 519-520.) Plaintiff is right-handed. (AR 520.)

Plaintiff lives with her husband; her three children, ages 19, 17, and 15; and her mother. (AR 520.) Plaintiff no longer drives because she has anxiety attacks and depression and her medication makes her sleepy so it is difficult for her to drive. (AR 520.) Her husband dropped her off for the hearing. (AR 520.)

Plaintiff completed school through the sixth grade in Mexico. (AR 521.) She understands very little English. (AR 521.)

Plaintiff worked for In-Home Supportive Services through 2011 taking care of her father. (AR 521.) She was paid for three or four hours and she would not be paid when her father was in the hospital. (AR 521.) Plaintiff worked the full day but was only paid for three to four hours because that was the maximum they would pay since her father lived with her. (AR 522.) Plaintiff would bathe her father, cook for him, feed him, vacuum his room, do his laundry, and take him to get his haircut. (AR 522.) She would lift him out of bed, help him walk and sit in a chair, and that is how she got hurt. (AR 522.) She would lift eight pounds in each hand. (AR 523.)

Plaintiff is unable to work because of back pain, headaches, anxiety attacks, and depression. (AR 523.) Plaintiff stated that she was in pain during the hearing and her pain level was 6 to 7. (AR 523.) On a good day, Plaintiff's pain level will be 5 and on a bad day it goes beyond 10 and she feels like she is dying. (AR 524.) Almost every day is a bad day. (AR 524.) Plaintiff does not go to the emergency room every day, she only goes about every month or month and a half. (AR 524.)

Plaintiff has headaches every day. (AR 525.) She will take her medication, lay down, and apply ice or alcohol to her head. (AR 525.) If the pills are working she will lie down for one and a half to two hours. (AR 525.) Plaintiff's pills do not work about every month or month and a half so she will go to the emergency room. (AR 525.) When she has headaches, Plaintiff is sensitive to light and cannot even stand to hear a piece of paper rustling. (AR 526.) Sometimes her headaches last two hours and sometimes they last all day. (AR 526.) Even after the headache goes away, she still feels discomfort. (AR 526.) Two or three days a week, Plaintiff's headaches will last all day. (AR 526.)

Plaintiff's back pain bothers her when she is walking or standing. (AR 526.) Plaintiff can walk about half a block and can stand for less than five minutes before she starts experiencing increased pain. (AR 526-527.) During an eight-hour work day, Plaintiff would be able to stand about half an hour but with pain. (AR 527.) As for walking, she is only able to walk to the bathroom or kitchen in her small house. (AR 527.) Plaintiff cannot clean or do any activity that lasts longer than that. (AR 527.)

Plaintiff does not do anything. (AR 527.) She cooks only rarely. (AR 527.) She sometimes goes shopping but will wait in the car while her husband and children do the purchasing. (AR 527.) Lifting aggravates Plaintiff's pain and she can only lift about three pounds. (AR 527.) She cannot lift a gallon of milk because it will cause her back and head to start hurting and her hand will ache up into her neck and along the side of her head on both sides. (AR 527-528.) Sometimes sitting aggravates her back pain, so that is why she took a pill prior to coming to the hearing. (AR 529.) Plaintiff can sit for two hours in an eight-hour workday. (AR 529.) Plaintiff has problems reaching in front of her or over her head because it hurts. (AR 529.)

It hurts to grab an object and hold onto it tightly. (AR 529.)

Plaintiff is depressed every day. (AR 529.) She always feels sadness and feels like crying. (AR 529.) Plaintiff just wants to be by herself. (AR 529.) She never wants to go anywhere. (AR 529.) Plaintiff's depression affects her concentration and she does not even watch television or read. (AR 529-530.) Plaintiff does not socialize with anyone and just stays in her room alone almost all of the time. (AR 530.)

Plaintiff also has panic attacks. (AR 530.) Whenever she walks a little bit on the street she feels like one of the cars is going to hit her. (AR 530.) The cars are loud and the sound makes her nervous so she cannot be outside very long. (AR 530.) She has to go back inside the house. (AR 531.) Plaintiff goes outside about once or twice a week and this will happen. (AR 531.) She only goes out once a week, and sometimes she will not go out for two weeks at a time. (AR 531.) Plaintiff also gets panic attacks when she is at home. (AR 531.) If she is not having a panic attack then she will have a deep depression. (AR 531.) She feels sad and like all she wants to do is cry. (AR 531.) She does not want to watch television or listen to music. (AR 531.) She just wants to isolate. (AR 531.)

Plaintiff takes medication that makes her sleepy. (AR 531.) During the day, Plaintiff will sleep for two to three hours. (AR 531.) She also lies down two times during the day. (AR 532.) Plaintiff's medication will sometimes relieve her pain. (AR 532.) She will lay down and wake up in extreme pain so her daughter will give her a massage to relieve the pain or she will give herself a massage. (AR 532.) Plaintiff stopped going for mental health treatment because the doctor told her she needed to stop taking the pain medication but she cannot. (AR 532.) She changed her doctor because she had problems with his receptionist. (AR 532-533.)

Susan D. Green, a vocational expert ("VE") also testified at the hearing. (AR 533-539.)

**B.    ALJ Findings**

The ALJ made the following findings of fact and conclusions of law.

- Plaintiff has not engaged in substantial gainful activity since the application date of June 13, 2014.

- Plaintiff has the following severe impairments: migraine disorder, lumbar spondylosis,

and adjustment disorder with mixed depression and anxiety.

- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.
- Plaintiff has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b). Plaintiff can lift carry, push, or pull 10 pounds frequently and 20 pounds occasionally. She can sit stand and walk for six hours. She can frequently stoop, kneel, crouch, and crawl. She can perform simple routine tasks meaning tasks that are SVP 1 or 2, learned by demonstrated or observation and performed by rote. She can have occasional exposure to cold, heat, vibration, fumes, and pulmonary irritants. Her exposure to lights would need to be limited to normal office environments. She would be limited to moderate sound environments.
- Plaintiff is unable to perform any past relevant work.
- Plaintiff was born on January 3, 1968, and was 46 years old, which is defined as a younger individual age 18-49, on the date the application was filed.
- Plaintiff is not able to communicate in English and is considered in the same way as an individual who is illiterate in English.
- Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is not disabled whether or not Plaintiff has transferable job skills.
- Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.
- Plaintiff has not been under a disability, as defined in the Social Security Act, since June 13, 2014, the date the application was filed.

(AR 28-40.)

/ / /

/ / /

/ / /

# III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520;[2] Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the

---

[2] The cases generally cited herein reference the regulations which apply to disability insurance benefits, 20 C.F.R. §404.1501 et seq., however Plaintiff is also seeking supplemental security income, 20 C.F.R. § 416.901 et seq. The regulations are generally the same for both types of benefits. Therefore, further references are to the disability insurance benefits regulations, 20 C.F.R. §404.1501 et seq.

Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

**IV.**

**DISCUSSION AND ANALYSIS**

Plaintiff contends that the ALJ erred by improperly considering the report of Dr. Lundeen, failing to include work-related limitations consistent with the nature and intensity of her limitations, failing to provide clear and convincing reasons for discounting her testimony regarding her migraine headaches, and the agency erred by failing to consider the new evidence presented. Defendant counters that the ALJ properly weighed the medical opinion evidence and the evaluation of Plaintiff's subjective complaints was proper and supported by substantial evidence. Plaintiff replies that the ALJ cannot cherry pick those findings in Dr. Lundeen's report that support the residual functional capacity assessment. Plaintiff argues that the ALJ erred by failing to separately evaluate and weigh the opinion of Dr. Mangat. Plaintiff contends that this opinion was submitted to the appeals counsel that failed to consider it. Plaintiff also argues that Defendant cannot rely on evidence in the record that the ALJ did not cite in his opinion to

1 support the adverse credibility finding.

2     **A.**     **Physician Opinion**

3     Plaintiff contends that the ALJ cherry picked portions of Dr. Lundeen's opinion and erred

4 by failing to provide specific and legitimate reasons to discount Dr. Lundeen's concurrence with

5 Dr. Mangat's report or alternately that the ALJ erred by failing to consider Dr. Mangat's report.

6     The weight to be given to medical opinions depends upon whether the opinion is

7 proffered by a treating, examining, or non-examining professional. See Lester v. Chater, 81 F.3d

8 821, 830-831 (9th Cir. 1995). "Generally, the opinions of examining physicians are afforded

9 more weight than those of non-examining physicians, and the opinions of examining non-

10 treating physicians are afforded less weight than those of treating physicians. Orn v. Astrue, 495

11 F.3d 625, 631 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(1)-(2)). "If a treating or

12 examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject

13 it by providing specific and legitimate reasons that are supported by substantial evidence."

14 Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citing 20 C.F.R. § 404.1527(d)(3)). The

15 contrary opinion of a non-examining expert is not sufficient by itself to constitute a specific,

16 legitimate reason for rejecting a treating or examining physician's opinion, however, "it may

17 constitute substantial evidence when it is consistent with other independent evidence in the

18 record." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The ALJ need not accept

19 the opinion of any physician that is brief, conclusory, and unsupported by clinical findings.

20 Thomas, 278 F.3d at 957.

21     The ALJ considered the history of Plaintiff's back pain, including Plaintiff's treatment by

22 Dr. Manjat and more recent treatment.

23         Prior to her amended alleged onset date, the claimant was treated for back pain
        and migraines [AR 978-983]. She had an MRI in 2011, which showed multilevel
24         disc changes, including broad based disc protrusion from L2-3 to L5-S1, effacing
        the anterior thecal sac at L2-3; neural foraminal narrowing from L2-3 to L5-S1,
25         mild to moderate from L2-3 through L4-5 though it was severe on the left at L4-5
        and L5-S1; there was mild stenosis at L4-5 [AR 955]. She had decreased range of
26         motion, decreased sensation on the left, and pain with straight leg raises. The
        claimant was treated with steroid injections and her doctor suggested a
27         microdiscectomy which she declined. She also was treated with narcotic pain
        medication and there was some concern noted regarding narcotic dependency.
28         She reported nausea with her headaches [AR 959-967]. Notably two months

prior to her amended alleged onset date despite historically positive findings the claimant had entirely negative physical neurological and musculoskeletal examinations [AR 803]. She was treated with various medications including Fioricet and Tylenol-3 and -4 [AR 804-827].

(AR 33.) The ALJ also considered the opinion of Dr. Lundgeen and the Worker's Compensation findings.

I was given temporary work excuses years prior to her onset date, [she] was returned to work at sedentary, and then generally advised to avoid heavy lifting activities and repetitive bending [and] stooping. She was provided apportionment and found unable to perform the customary duties of her job [AR 959-973]. The claimant received a workers compensation award indicating that she received a 37% disability [AR 688-703]. The work excuses were all provided on a temporary basis several years prior to the amended alleged onset date and thus are considered for their historical value only and given no weight. Similarly, the sedentary work restriction was also rendered several years prior to the claimant's amended alleged onset date and does not consider the entirely negative musculoskeletal and physical examinations. It is given little weight. The heavy lifting restriction and repetitive bending and stooping restrictions are somewhat vague and were also rendered years prior to the amended alleged onset date. However, they were rendered as part of a permanent and stationary report and are consistent with some of the claimant's continued pain allegations. They are thus given some weight. The inability to perform past work is on an issue reserved to the Commissioner but is consistent with the ultimate findings in this decision as well as the residual functional capacity determined above and is thus given some weight. Finally the disability rating is vague and inconsistent with the lack of physical findings during the period at issue. It is given little weight.

(AR 36.)

1.    Dr. Manjat's Opinions

The ALJ did consider Dr. Manjat's opinion that Plaintiff was limited to sedentary work and provided two reasons to reject her opinion. The ALJ found that the sedentary work recommendation was provided several year's prior to the amended alleged onset date and that it did not take into account the later conducted entirely negative musculoskeletal and physical examinations that were reflected in the record and for that reason it was given little weight.

Here, Plaintiff did not provide the treatment records of Dr. Manjat. The ALJ cites to Dr. Lundeen's report which sets forth the treatment and opinions of Dr. Manjat. (AR 36, 959-968.) While Dr. Manjat opined that Plaintiff was limited to sedentary work, the ALJ found that subsequent medical records, including those two months prior to the alleged onset date, demonstrated that Plaintiff had normal musculoskeletal examinations.

Review of the medical record from January through May 2013 shows that Plaintiff had tenderness in the lumbar paraspinal muscles with no guarding and no spasms.[3]  (AR 230, 245, 254, 257, 260.)  She had a negative straight leg examination and motor strength of 5-/5 with some restricted flexion and bending.  (Id.)  However, as the ALJ found, the subsequent medical findings on musculoskeletal examination reflect no evidence of spinal pain, and frequently note full range of motion and normal bulk and tone and normal gait.  (AR 803, 806-807, 809, 812, 816, 819, 822, 825, 847, 850, 931, 934, 937, 940, 949, 1006, 1056, 928.)

Plaintiff's amended onset date is June 2014, and after this date there are multiple notations that Plaintiff denied having  back pain.  On June 27, 2014, it is noted that Plaintiff reports no back pain and no musculoskeletal tenderness (AR 859); October 30, 2014, Plaintiff reported no back pain (AR 863); January 9, 2015, Plaintiff reported no tenderness (AR 867); February 7, 2015, Plaintiff reports negative for back pain (AR 870); April 12, 2015, Plaintiff reported negative for back pain or gait problems (AR 886); April 17, 2015, Plaintiff reports negative for back pain (AR 889); and July 6, 2016, Plaintiff reported no back pain (AR 1006).

The only notations regarding complaints of back pain in the relevant record are on July 19, 2015, when Plaintiff was complaining of a headache and low back pain.  (AR 951.) However, musculoskeletal examination revealed no evidence of joint pain, tenderness or deformity with full range of motion intact to all major joints.  (AR 952.)  Plaintiff had normal bulk and tone for age and normal gait.  (AR 952.)  Similarly, on August 29, 2015, Plaintiff reported to the emergency room complaining of back pain and a headache, but musculoskeletal examination revealed normal range of motion, no tenderness, no bony tenderness, and no swelling with full strength to the upper and lower extremities.  (AR 1042.)  On September 16, 2016, Plaintiff reported midline lower back pain.  (AR 990.)  An x-ray of the lumbar spine showed mild degenerative changes with spondylosis.  (AR 995.)

The ALJ properly considered the inconsistency with the medical record in rejecting Dr. Mangat's opinion that Plaintiff was limited to sedentary work.  Morgan v. Comm'r of Soc. Sec.

---

[3] The Court notes that these are the later submitted medical records which were not before the ALJ.

Admin., 169 F.3d 595, 602 (9th Cir. 1999). The ALJ provided a specific and legitimate reason, supported by substantial evidence in the record, for the weight provided to Dr. Manjat's opinions.

### 2. Dr. Lundeen's Opinion

In the determination of whether Plaintiff was permanent and stationary from her work related injury, Plaintiff had an agreed medical examination by Dr. Lundeen on July 18, 2012. (AR 954-973.) Dr. Lundeen considered Plaintiff's prior treatment, including that Dr. Mangat had performed a permanent and stationary report on January 19, 2012. (AR 955-956, 959-968.) Dr. Lundeen performed a physical examination of Plaintiff. He noted that Plaintiff was a well-appearing 44-year-old female in no acute distress. (AR 968.) On examination she was able to perform heel and toe walk with no evidence of weakness in dorsiflexion or plantar flexion. (AR 968.) Lower back evaluation demonstrated range of motion with forward flexion to 45 with 70 being normal and extension to 5 with 30 being normal. (AR 968.) Lateral bending was to 15 to the right and 15 to the left with 25 being normal. (AR 968.) Dr. Lundeen noted that Plaintiff had positive tenderness to palpation in the paravertebral musculature on the right and left sides. (AR 968.) There was positive muscle guarding with active range of motion of the lumbar spine and positive paravertebral muscle tightness and spasm appreciated on the right and left sides. (AR 968.) Waddell's simulation tests were performed. (AR 968.) Axial loading was negative and truncal rotation was negative. (AR 968.)

Motor examination of the lower extremities revealed 5/5 to the right lower extremity and 4/5 to the left lower extremity. Dr. Lundeen found that Plaintiff demonstrated "cogwheel weakness in all myotomes of the left lower extremity" and this is considered to be non-physiologic. (AR 968.).

Sensory examination of the lower extremities to include light touch and pinprick was normal on the right and decreased on the left. Reflex examination showed 2+ to the bilateral knees and right ankle and 1+ to the left ankle. Babinski and Conus were negative bilaterally. (AR 969.) Straight leg raising examination of the lower extremities on sitting was 90/90 to the right and 70/90 to the left with pain. (AR 969.)

Dr. Lundeen determined that Plaintiff's low back pain condition was a result of her injury on March 3, 2011 and that her narcotic dependency was a compensable consequence of the lower back injury and low back treatment. (AR 969-970.) Dr. Lundeen found that Plaintiff had reached permanent and stationary status on January 19, 2012. (AR 970.) Plaintiff was determined to have a 16 percent whole person impairment based on her low back pain condition and her narcotic dependency. (AR 971.) Dr. Lundeen opined that Plaintiff should avoid the use of opioid narcotics and should be treated with nonsteroidal anti-inflammatory medications or Tylenol. (AR 971-972.) Plaintiff was recommended to participate in physical therapy and consistent and regular participation in non-impact aerobic fitness exercise such as stationary bicycling, swimming, a vigorous walking program or an elliptical trainer for a minimum of thirty to forty minutes three times per week. (AR 972.) He also recommended that Plaintiff participate in truncal stability and neutral spine exercise program, such as Pilates. (AR 972.)

Plaintiff was found to be not capable of performing the customary duties of her job and was therefore a qualified injured worker. (AR 972.) Dr. Lundeen found that Plaintiff's permanent work restrictions were to avoid heavy lifting activities and avoid repetitive bending and stooping activities. (AR 973.)

The ALJ found that the heavy lifting restriction and repetitive bending and stooping restrictions were somewhat vague and were also rendered years prior to the amended alleged onset date. (AR 36.) However, she also considered that they were rendered as part of a permanent and stationary report and are consistent with some of Plaintiff's continued pain allegations and gave them some weight. (AR 36.)

Plaintiff argues that Dr. Lundeen's opinion is tied to that of Dr. Mangat and therefore, the ALJ erred by failing to adopt the limitation that Plaintiff could not lift, carry, push, or pull above 10 pounds and was limited to sedentary work. However, Dr. Lundeen made no such findings in his opinion. While he did set forth the opinion of Dr. Mangat in the medical records reviewed, Dr. Lundeen performed a physical examination and, following his examination, opined that Plaintiff should avoid heavy lifting activities and should avoid repetitive bending and stooping activities. (AR 973.) Dr. Lundeen did not opine that Plaintiff was limited to ten pounds and

sedentary work. Therefore, the ALJ did not fail to adopt such limitations based on Dr. Lundeen's opinion.

While Plaintiff argues that it would be disingenuous to reject Dr. Mangat's opinion based on the 2012 date and then credit Dr. Lundeen's opinion that was issued the same year, the ALJ rejected Dr. Mangat's opinion because it was inconsistent with the subsequent medical record showing that Plaintiff had normal musculoskeletal examinations and few complaints of back pain subsequent to the amended onset date. However, in considering Dr. Lundeen's opinion, the ALJ found that, while the limitations opined were somewhat vague, they were consistent with Plaintiff's allegations of continued back pain. The ALJ provided a specific and legitimate reason for the difference in weight provided to Dr. Lundeen's opinion.

**B.      Plaintiff's Symptom Testimony**

Plaintiff contends that the ALJ erred by failing to provide a clear and convincing reason to reject her migraine symptom testimony.

"An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment." Orn, 495 F.3d at 635 (internal punctuation and citations omitted). Determining whether a claimant's testimony regarding subjective pain or symptoms is credible, requires the ALJ to engage in a two-step analysis. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). The ALJ must first determine if "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted). This does not require the claimant to show that her impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms. Smolen, 80 F.3d at 1282.

Then "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." Brown-Hunter v. Colvin, 806 F.3d 487, 488–89 (9th Cir. 2015). "The ALJ must specifically make findings that support this conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not

arbitrarily discredit the claimant's testimony." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (internal punctuation and citations omitted). Factors that may be considered in assessing a claimant's subjective pain and symptom testimony include the claimant's daily activities; the location, duration, intensity and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; functional restrictions; and other relevant factors. Lingenfelter, 504 F.3d at 1040; Thomas, 278 F.3d at 958. In assessing the claimant's credibility, the ALJ may also consider "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; [and] (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. . .." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Smolen, 80 F.3d at 1284). The district court is constrained to review those reasons that the ALJ provided in finding the claimant's testimony not credible. Brown-Hunter, 806 F.3d at 492.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the symptoms alleged, but that Plaintiff's testimony regarding the intensity and limiting effects of her symptoms were not consistent with the medical evidence and other evidence found in the record. (AR 33.)

The ALJ considered that Plaintiff alleged that she had back pain and headaches every day. (AR 32, 523.) Plaintiff testified that practically every day was a bad requiring her to lie down for one and half to two hours, place ice or alcohol on her head, and that she was sensitive to light and noise. (AR 32, 524-525, 532.) When she lies down she has to shift position and if does not she wakes up in extreme pain and has to be massaged to relieve the pain. (AR 532.) She also stated that she had a headache every day that lasted two hours to all day and that she sometimes had residual discomfort for two to three days. (AR 32, 526.)

1.    Inconsistent Statements

The ALJ found that Plaintiff's allegations of disabling pain at the hearing and in her function reports were inconsistent with her reports to physicians that she was able to care for her

personal hygiene, occasionally help shop, cook and do household chores, and care for her mother who had dementia. (AR 29, 34.) On June 29, 2014, Plaintiff completed an adult function report. (AR 736-744.) Plaintiff reported that she did not take care of anyone else. (AR 737.) She reported that it was difficult for her to take a bath and she was unable to care for her hair or shave and other people had to make her food. (AR 737.) Plaintiff reported that she was unable to prepare her own meals and could only cook with help. (AR 738.) She reported she did not perform any household chores. (AR 738.)

On September 19, 2014, Plaintiff had a psychiatric consultation and reported that she is able to take care of her personal hygiene and can occasionally help shop, cook and do household chores. (AR 839.) On November 5, 2013, Plaintiff had reported at an office visit that she was depressed because she was taking care of her mother who had dementia and Plaintiff was helping her with all her activities of daily living. (AR 822.)

The ALJ properly considered Plaintiff's statements to medical providers that contradict her adult function report and hearing testimony regarding the disabling effects of her pain symptoms. Robbins, 466 F.3d at 884 (conflicting or inconsistent statements can contribute to an adverse credibility finding); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997), as amended on reh'g (Sept. 17, 1997) (credibility determination can be based on conflicts between the claimant's testimony and his own conduct, or on internal contradictions in that testimony).

2. Inconsistencies with Objective Medical Evidence

The ALJ also found that Plaintiff's allegations of disabling back pain were inconsistent with the reports in the medical record that she had no back pain until several months after her alleged onset date and only intermittent reports of back pain in the medical record after the hearing. (AR 35.) As discussed above, there is substantial evidence in the record to support the ALJ's finding that Plaintiff's allegations of disabling back pain were inconsistent with the objective medical evidence in the record which showed generally normal musculoskeletal examinations and limited reports of back pain. Although, the ALJ cannot discredit Plaintiff's pain testimony solely because it is found not to be supported by the objective medical evidence, Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2));

Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991), the ALJ provided another reason to reject Plaintiff's testimony. Therefore, the ALJ could properly consider that Plaintiff's complaints are inconsistent with clinical evaluations which can satisfy the requirement of stating a clear and convincing reason for discrediting the claimant's testimony. Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1297 (9th Cir. 1999).

   3. Headache Symptoms

  The ALJ found that while Plaintiff did have regular treatment for her migraines, she had entirely negative neurological examinations and no additional workup for the migraines. (AR 34.) The ALJ found that Plaintiff's symptom reports were not entirely consistent because sometimes she would deny symptoms such as photophobia which she had earlier reported. (AR 34.)

  The Court finds these reasons are not clear and convincing reasons to reject Plaintiffs' symptom testimony regarding her migraine headaches. First, the record demonstrates that Plaintiff has been diagnosed with migraine headaches and Defendant has not demonstrated that diagnostic tests are required to support the diagnosis (although the Court notes that the record does reflect that Plaintiff has not been provided with any medication to prevent her headaches). (AR 872.) Additionally, the fact that Plaintiff's migraine symptoms may differ do not necessarily reflect negatively on her credibility but rather speak to the type or severity of the headaches themselves.

  The ALJ did find that at times Plaintiff's symptoms were reported when she had run out of medication, including incidents where physicians refused her medication and she left without scheduling a follow-up with her primary care physician. (AR 34.) There is support in the record that on several occasions in which Plaintiff presented to the emergency room with migraine she had run out of her medication. (AR 833, 985, 1005.) Further, there are notations in the record that when Plaintiff was refused pain medication she became angry and left, even when the providers were offering to assist her in getting an appointment with her primary care provider to have medication prescribed. (AR 987.) Finally, the ALJ considered that Plaintiff was noted to have some degree of symptom amplification and her physicians indicated concern that she had

narcotic dependency. (AR 33, 35, 861.) Plaintiff admitted at the hearing that she stopped seeking mental health treatment because the psychiatrist recommending that she stop taking narcotic medication. (AR 532, 861, 928, 970.)

The Court finds that the ALJ provided clear and convincing reasons to reject Plaintiff's symptom testimony.

### C. Medical Evidence Submitted to Appeal's Counsel

Plaintiff argues that the appeals counsel erred by failing to consider the medical evidence that was provided after the ALJ issued his decision. Defendant does not address the issue in her opposition.

Prior to January 17, 2017, the Social Security regulations provided that the Appeal's Council was required to "consider" additional evidence as long as it was new, material, and related to the period on or before the ALJ's decision. 20 C.F.R. § 404.970(b) (effective through January 16, 2017). As of January 17, 2017, the Social Security regulations provide that the additional evidence will be considered if "the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5). 'The Appeals Council will only consider additional evidence under paragraph (a)(5) of this section if [the claimant] show[s] good cause for not informing us about or submitting the evidence. . . ." 20 C.F.R. § 404.970(b).

> Pursuant to Section 404.970(a), if good cause is shown, the Appeals Council will then determine whether to review a case on the basis of additional evidence if such evidence is new, material, relates to the period on or before the hearing decision, and provides a reasonable probability that the outcome of the hearing decision would change. Id. § 404.970(a). In other words, according to the plain language of Section 404.970, inter alia, (1) additional evidence will not be considered if a claimant fails to show good cause for not timely submitting it, (2) if good cause is shown, additional evidence will be considered, and (3) the Appeals Council will consider additional evidence for which good cause is shown in determining whether to review a case on the basis of additional evidence.

West v. Berryhill, No. 18-CV-00092-DKW-RT, 2019 WL 362259, at *5 (D. Haw. Jan. 29, 2019); accord Norbert S., v. Nancy A. Berryhill, No. 6:18-CV-00218-AC, 2019 WL 2437457, at *10 (D. Or. June 11, 2019).

The Ninth Circuit has issued a series of decisions that distinguish evidence that the Appeal's Council formally considered and made part of the administrative record which was therefore subject to judicial review. "[W]hen the Appeal's Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1163 (9th Cir. 2012). Where the additional evidence has become part of the record, the district court considers it in light of the record as a whole in determining whether the ALJ's decision is supported by substantial evidence and free of legal error. Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1232 (9th Cir. 2011); Ramirez v. Shalala, 8 F.3d 1449, 1452 (9th Cir. 1993). If the Appeal's Council fails to consider additional evidence that it was required to consider, remand is appropriate for the ALJ to reconsider the opinion in light of the additional evidence. Taylor, 659 F.3d at 1233.

Here, Plaintiff was advised that she would be required to show good cause as to why she did not inform the ALJ of the additional evidence or submit it earlier in response to her request for review. (AR 10, 14.) Despite, being notified that she would be required to show good cause for the failure to present the evidence earlier, the request for review merely states that the Worker's Compensation case was noted but records were never requested. (AR 797-798.) The denial letter does not address whether Plaintiff showed good cause for not submitting the additional evidence during the period in which the ALJ held evidence open and therefore good cause was not found for the failure to submit the new evidence earlier. (AR 1-4.) Because Plaintiff did not demonstrate good cause for the failure to submit the evidence earlier, the Appeal's Counsel was not required to consider it in determining whether to review the case. 20 C.F.R. § 404.970(a), (b). Here, the Appeal's Counsel only looked at the evidence and determined that there was no reasonable probability that the newly submitted evidence would change the outcome of the decision. (AR 2.) Therefore, the new evidence was not considered or exhibited. (AR 2.) As the new evidence did not become part of the record, this Court may not review it. Lowry v. Barnhart, 329 F.3d 1019, 1024 (9th Cir. 2003); Amor v. Berryhill, 743 F.

App'x 145, 146 (9th Cir. 2018).

In determining whether to remand a case in light of new evidence, the court considers whether the new evidence is material to the disability determination and whether the claimant has shown good cause for the failure to present the evidence to the ALJ earlier. Mayes v. Massanari, 276 F.3d 453, 462 (9th Cir. 2001). Even if the evidence is material, Plaintiff has failed to show good cause for the failure to submit the evidence to the ALJ. Plaintiff's appeal states that they knew about the Worker's Compensation case, but that they did not request the medical records. (AR 797-798.) "To demonstrate good cause, the claimant must demonstrate that the new evidence was unavailable earlier." Mayes, 276 F.3d at 463.

However, even were the Court to consider the additional evidence, it would not change the outcome of this appeal. Plaintiff concedes that much of the 500 pages are not individually material to the ALJ's decision because they contain records during her recovery period after the 2011 injury. Plaintiff argues that the maximum medical improvement and permanent and stationary status by Dr. Manjat are highly relevant to Plaintiff's functioning on the application date.[4]

Under California Worker's Compensation "permanent and stationary status can be defined as attained ". . . after the employee has reached maximum medical improvement or his or her condition has been stationary for a reasonable period of time." Gangwish v. Workers' Comp. Appeals Bd., 89 Cal. App. 4th 1284, 1290 n.7 (2001) (quoting Cal. Code Regs., tit. 8, § 10152). Plaintiff argues that this is highly relevant because it demonstrates that Plaintiff had received her maximum medical improvement and that she can only perform sedentary work. The ALJ is required to evaluate the medical findings of Plaintiff's Worker's Compensation physicians the same as she would any other medical opinion. Booth v. Barnhart, 181 F.Supp.2d 1099, 1105 (C.D. Cal. 2002). The ALJ noted that Plaintiff had been found to be permanent and stationary in addressing Dr. Lundgeen's report and gave the findings some weight as they were consistent

---

[4] Plaintiff argues that because the finding was that she was permanent and stationary, it is presumed that her condition did not change since that time. However, the ALJ identified and addressed the specific evidence which he found showed that the 2012 reports were no longer reflective of Plaintiff's physical ailments during the relevant time period.

with Plaintiff's allegations of continued back pain. (AR 36.) The ALJ also addressed Dr. Manjat's findings that Plaintiff was limited to sedentary work and gave them little weight because they were rendered several year's prior to her alleged disability date and did not consider the entirely negative musculoskeletal and physical examinations. (AR 36.)

Dr. Manjat saw Plaintiff on January 19, 2012. (AR 219-225.) Dr. Manjat noted that Plaintiff was in mild distress, had tenderness on examination, her gait was slow, and she was ambulating with a cane. (AR 221-222.) Dr. Manjat opined that Plaintiff's "lower back impairment is best characterized by DRE category 3 with impairment of 10 percent of whole person. In my opinion she qualifies for this rating because of her radicular complaints as a result of mild loss of strength at the left ankle dorsiflexion and extensor hallucis longus to left big toe." (AR 223.) Dr. Manjat further opined that Plaintiff had reached maximum medical improvement as of January 19, 2012, and should have a permanent restriction to semi-sedentary work with no lifting, carrying, pulling, or pushing above 10 pounds, no twisting of the back, and change positions frequently. (AR 225.) This record is reflected in the report of Dr. Lundeen which was referenced by the ALJ, but not clearly addressed, in the opinion. (AR 36, 967-968.)

As discussed, the ALJ found that prior to her amended onset date, Plaintiff had normal musculoskeletal examinations and the record after the amended onset date showed entirely negative musculoskeletal and physical examinations. (AR 36.) The ALJ noted that the sedentary work restriction opined by Dr. Manjat was rendered several years prior to the amended alleged onset date and did not consider these entirely negative musculoskeletal and physical examinations prior to and after the alleged onset date. (AR 36.)

While Plaintiff argues that the limitations are highly relevant to Plaintiff's functioning on the application date, the ALJ considered that Dr. Mangat had found Plaintiff to be limited to sedentary work and provided a specific and legitimate reason to reject the limitation. The reasons that the ALJ provided to reject the limitation to sedentary work apply equally to Dr. Manjat's finding that Plaintiff was limited to semi-sedentary work with no lifting, carrying, pulling, or pushing above 10 pounds. (AR 225.) Accordingly, the Court finds that there is no "reasonable probability that the additional evidence would change the outcome of the decision."

20 C.F.R. § 404.970(a)(5).[5]

# V.

## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ did not err in considering the medical opinions, in determining that Plaintiff's symptom testimony was not credible and in failing to consider later presented evidence.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED. It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Maria Aguilar de Orozco. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: **June 26, 2019**

UNITED STATES MAGISTRATE JUDGE

---

[5] Plaintiff's allegation that the ALJ failed to include work related limitations in the residual functional capacity assessment is based upon the argument that the ALJ improperly rejected the limitations imposed by Dr. Mangat and improperly rejected her symptom testimony. The Court finds no error in the ALJ's consideration of the physician opinions or the credibility determination. Plaintiff has failed to identify any other inconsistencies in the residual functional capacity assessment.